**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLUMBIA**

| | |
|---|---|
| INFORMED CONSENT ACTION NETWORK,<br><br>*Plaintiff,*<br><br>v.<br><br>NATIONAL INSTITUTES OF HEALTH, et al.,<br><br>*Defendants.* | **Case No. 1:24-CV-1780-RCL** |

## MEMORANDUM OPINION

Plaintiff Informed Consent Action Network ("ICAN") has moved for attorneys' fees under the Freedom of Information Act ("FOIA"). Defendant National Institutes of Health ("NIH") opposes, arguing that ICAN is neither eligible for nor entitled to attorneys' fees. ICAN argues that it is eligible for attorneys' fees under the catalyst theory, meaning that it substantially prevailed by causing "a voluntary or unilateral change in position by the agency." 5 U.S.C. § 552(a)(4)(E)(ii). Because the Court finds that ICAN has not carried its burden of demonstrating causation under the catalyst theory, the Court will deny its Motion for Attorneys' Fees.

### I. BACKGROUND

ICAN submitted a FOIA request to the NIH in May 2022 seeking "[a]ll documents sufficient to show the date, amount, and payor of all royalty payments made to Anthony Fauci between fiscal years 2010–2021." Compl., ECF No.1, ¶ 6; *see also* Pl.'s Mot., ECF No. 29, at 9; NIH Opp., ECF No. 32, at 5. About two years later, Plaintiff requested a status update from NIH, who replied that the request was "being processed in the order it was received." Compl. Ex. 3.

According to NIH, there had been an administrative error with the original request, meaning that the request had not been properly logged. Lampe Decl., ECF No. 32-1, ¶ 8. To remedy the issue, NIH backdated ICAN's request to ensure that "it would be properly logged by the date request was received." *Id.* ¶ 10. About a month later, in May 2024, NIH prepared a response to ICAN's request using material compiled for another FOIA request. *Id.* ¶ 13. ICAN brought the present lawsuit in June 2024. *See* Compl.

The Court ordered NIH to produce a *Vaughn* index with a supporting motion to dismiss or motion for summary judgment in August 2024. ECF No. 14. NIH issued a complete response to ICAN's request in November 2024. Lampe Decl. ¶ 15; Pl.'s Mot. at 10. After submitting a series of status reports to inform the Court of their progress, ECF Nos. 17, 20, 23, 25, 26, 27, the parties were able to resolve their dispute with the exception of ICAN's demand for attorneys' fees, ECF No. 27. That dispute has now been fully briefed and is ripe for the Court's review.

## II. LEGAL STANDARD

The FOIA provides that a court "may assess against the United States reasonable attorney fees and other litigation costs reasonably incurred in any case under this section in which the complainant has substantially prevailed." 5 U.S.C. § 552(a)(4)(E)(i). Put another way, a FOIA plaintiff must substantially prevail to be eligible for attorney's fees. The court may then determine whether they are entitled to fees.

A plaintiff has substantially prevailed, and is therefore eligible to receive attorney's fees, if they have "obtained relief through either (I) a judicial order, or an enforceable written agreement or consent decree; or (II) a voluntary or unilateral change in position by the agency, if the complainant's claim is not insubstantial." *Id.* § 552(a)(4)(E)(ii).

These provisions were part of Congress's 2007 amendment to the FOIA. *See Grand Canyon Tr. v. Bernhardt*, 947 F.3d 94, 96 (D.C. Cir. 2020). Before the amendment, the D.C. Circuit had held that a plaintiff could demonstrate that it had substantially prevailed by either "pointing to a favorable action by a court" or through the "catalyst theory." *Id.* When the Supreme Court eliminated the catalyst theory, though, Congress responded by codifying each path to recovery as "Prong I" and "Prong II" of the current statute respectively. *Id.*

ICAN argues that it is entitled to attorneys' fees under Prong II and dedicates a substantial portion of its motion to disputing the appropriate legal standard. See Pl.'s Mot. at 10–24. Specifically, it cites two concurring opinions, one of which is not from this circuit, to argue that the amended statute abrogated the "catalyst theory" meaning that causation is an inappropriate consideration. *Id.* at 11 (first citing *First Amendment Coal. v. U.S. Dep't of Just.*, 878 F.3d 1119, 1130 (9th Cir. 2017) (Berzon, J., concurring), then citing *Grand Canyon Tr.*, 947 F.3d at 100 (D.C. Cir. 2020) (Randolph, J., concurring)).[1]

On that basis, ICAN invites the Court to correct the D.C. Circuit's error in reviving the catalyst theory by "reject[ing] those precedents and return[ing] to the governing text." Pl.'s Mot. at 18. But that is not the role of the district court. The Court's obligation is to apply the law as interpreted by the D.C. Circuit and Supreme Court. Accordingly, the Court declines Plaintiff's invitation.

The D.C. Circuit has stated clearly that, under Prong II, "a plaintiff can prove fee eligibility by showing that its lawsuit 'substantially caused the government to release the requested documents before final judgment.'" *Grand Canton Tr.*, 947 F.3d at 96; *accord Brayton v. Office*

[1] Strangely, though, ICAN later concedes that the provision at issue "codifies the so-called 'catalyst theory' of fee eligibility . . . ." Pl.'s Reply, ECF No. 33, at 4.

*of the U.S. Trade Representative*, 641 F.3d 521, 525 (D.C. Cir. 2011); *Summers v. Dep't of Just.*, 569 F.3d 500, 503 (D.C. Cir. 2009).

"[T]he plaintiff has the burden of showing 'that it is more probable than not that the government would not have performed the desired act absent the lawsuit.'" *Grand Canyon Tr.*, 947 F.3d at 97 (quoting *Pub. Citizen Health Rsch. Grp. v. Young*, 909 F.2d 546, 550 (D.C. Cir. 1990)).

## III. ANALYSIS

ICAN makes two alternative arguments to support its eligibility for attorneys' fees. Because the Court has addressed and rejected its arguments regarding the abrogation of the catalyst theory, *see supra* section II, the Court only addresses its argument that it is nonetheless eligible for attorneys' fees under the catalyst theory, *see* Pl.'s Mot. at 27.

ICAN argues that its "prosecution of litigation caused Defendants to release the documents obtained" and that "it is more probable than not that the government would not have performed the desired act absent the lawsuit." *Id.* at 28. Plaintiff relies on the timeline of NIH's response to infer causation. On ICAN's account, it waited for two years after submitting its FOIA request in 2022 and the NIH only released the desired documents after the suit commenced in 2024. *Id.* at 28–29.

To prevail, ICAN must establish a "causal nexus" between the lawsuit and the litigation. *See Elec. Privacy Info. Ctr. v. U.S. Dep't of Homeland Sec.*, 218 F. Supp. 3d 27, 41 (D.D.C. 2016). That means that if NIH was simply plodding along and processing ICAN's request when the lawsuit was filed, the causal nexus is absent. The nexus would likewise be absent if NIH had decided to delay disclosure but was unaffected by the lawsuit.

ICAN's theory therefore depends on two inferences. First, the inference that "the agency decided against disclosure or was engaging in unexplained delay before the filing of the lawsuit." *First Look Media Works, Inc. v. U.S. Agency for Glo. Media*, No. 20-3499, 2024 WL 4262773, at *6 (D.D.C. Sept. 23, 2024), *aff'd,* No. 24-5257, 2025 WL 1840647 (D.C. Cir. July 2, 2025); *see also Cox v. U.S. Dep't of Just.*, 601 F.2d 1, 6 (D.C. Cir. 1979) ("[T]he party seeking such fees in the absence of a court order must show that prosecution of the action could reasonably be regarded as necessary to obtain the information."); *Elec. Privacy Info. Ctr.*, 218 F. Supp. 3d at 41 ("[T]he Court must determine whether the plaintiff demonstrated that the lawsuit was necessary to ensure the agency's compliance with FOIA."). A substantial delay can support an inference of such misbehavior. *Id.* (citing *Am. Wild Horse Campaign v. U.S. Bureau of Land Mgmt.*, No. 22-cv-3061, 2024 WL 3967256, at *4 (D.D.C. Aug. 26, 2024).

ICAN would then have to establish a second inference that the "agency's 'sudden acceleration' in processing a FOIA request" after the lawsuit means that the lawsuit "substantially caused the agency's compliance with FOIA." *Elec. Privacy Info. Ctr.*, 218 F. Supp. 3d at 41 (quoting *Terris, Pravlik & Millian, LLP v. Ctrs. For Medicare and Medicaid Servs.*, 794 F. Supp. 2d 29, 38 (D.D.C. 2011)); *accord First Look Media*, 2024 WL 4262773, at *4 ("Second, a plaintiff must show that the agency did in fact accelerate its response to the FOIA request because of the lawsuit.").

ICAN's inferential argument fails at step one.

The inference of agency misbehavior "is eroded, if not fully rebutted, when the agency provides an alternative explanation for the delay, such as 'unintentional administrative burdens' like understaffing and FOIA backlogs." *First Look Media*, 2024 WL 4262773, at *4 (quoting *Env't Integrity Project v. U.S. Env't Prot. Agency*, 316 F. Supp. 3d 320, 327–28 (D.D.C. 2018)); *see also*

*Terris, Pravlik & Millian, LLP*, 794 F. Supp. 2d at 38 ("[I]f the government's assertion for any delay is the slowness of the FOIA process despite its due diligence, disclosure after the lawsuit is filed, even if long delayed, will not in itself justify the award of fees.").

NIH provides an alternative explanation for the delay. NIH submitted a declaration indicating that there was a simple administrative error in logging ICAN's original request which the NIH, when contacted by ICAN, remedied by backdating ICAN's request. Lampe Decl. ¶¶ 8–10. Karen Lampe, the FOIA officer at NIH, also explained that the NIH was inundated with FOIA requests at the time, a number of which had been submitted by ICAN itself. *Id.* ¶ 16.

ICAN, of course, disputes that account, arguing that the assignment of a case number only after ICAN reached out in 2024 indicates that "the request was not being processed at all." Pl.'s Reply at 5. But that argument does not seem responsive. The failure to assign a case number is an administrative error which does not support the inference that "the agency decided against disclosure or was engaging in unexplained delay before the filing of the lawsuit." *First Look Media*, 2024 WL 4262773, at *6.

Additionally, the Lampe Declaration indicates that NIH responded diligently once it recognized the error. It backdated ICAN's request, Lampe Decl. ¶ 10, and had already prepared its response to ICAN's request before ICAN had even filed suit, *id.* ¶ 11. This case is therefore analogous to *Harvey v. Lynch* where the court determined that a plaintiff was ineligible for attorneys' fees under the catalyst theory because the defendant had provided a declaration from an agency analyst that indicated that the "bulk of the work to process" the FOIA request "had already been completed by the time [the plaintiff] filed suit." 178 F. Supp. 3d 5, 7–8 (D.D.C. 2016).

ICAN's argument that a full response to its FOIA request only issued after the lawsuit was filed, Pl.'s Reply at 5, therefore misses the point. NIH has put forward an explanation through the Lampe Declaration that any delay in disclosure was administrative in nature, so it simply does not follow that ICAN's lawsuit influenced the response.

And to the extent that ICAN disputes the Lampe Declaration, controlling precedent dictates that "agency declarations are entitled to 'a presumption of good faith,'" *Judicial Watch v. U.S. Dep't of Just.*, 831 F. Supp. 3d 1, 13 (D.D.C. 2026) (quoting *SafeCard Servs., Inc. v. Sec. & Exch. Comm'n*, 926 F.2d 1197, 1200 (D.C. Cir. 1991)), which can only be set aside by clear evidence to the contrary, *id.* (citing *Nat'l Archives & Recs. Admin. v. Favish*, 541 U.S. 157, 174–75 (2004)).

Accordingly, the Court finds that ICAN has failed to carry its burden of establishing by a preponderance of the evidence that "the government would not have performed the desired act absent the lawsuit.'" *Grand Canyon Tr.*, 947 F.3d at 97.

Because ICAN has not established that it is eligible for attorneys' fees, the Court does not address whether it is entitled to attorneys' fees. *See* 5 U.S.C. § 552(a)(4)(E)(i).

## IV. CONCLUSION

For the reasons contained herein, ICAN's Motion for Attorneys' Fees will be denied. A separate Order accompanying this Memorandum Opinion shall issue.

Date: 5 October, 2026

Hon. Royce C. Lamberth
United States District Judge